UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | | |
|---|---|---|
| In re: | : | CASE No. 15-21646 (JJT) |
| | : | |
| ANLINDA Y. KNIGHT, | : | CHAPTER 7 |
| Debtor. | : | |
| | : | |
| THOMAS C. BOSCARINO, | : | ADV. PRO. No. 15-02064 (JJT) |
| CHAPTER 7 TRUSTEE OF THE ESTATE OF | : | |
| ANLINDA Y. KNIGHT, | : | |
| | : | |
| Plaintiff. | : | |
| v. | : | |
| | : | RE: ECF Nos. 30, 34, 35, 36 |
| BOARD OF TRUSTEES OF CONNECTICUT | : | |
| STATE UNIVERSITY SYSTEM, | : | |
| | : | |
| Defendant. | : | |

## **APPEARANCES**

| | |
|---|---|
| Jeffrey Hellman, Esq. | Attorney for the Chapter 7 Trustee |
| Law Offices of Jeffrey Hellman, LLC | |
| 195 Church Street, 10th Floor | |
| New Haven, CT 06510 | |
| | |
| Denise S. Mondell, Esq. | Attorney for the Board of Trustees |
| Assistant Attorney General | |
| 55 Elm St., Fourth Floor | |
| Hartford, CT 06141-0120 | |

## **MEMORANDUM OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In this adversary proceeding, Thomas C. Boscarino, the Chapter 7 Trustee (the "Trustee")

of the estate of Alinda Y. Knight (the "Debtor" or "Ms. Knight") seeks to avoid and recover, as

fraudulent transfers pursuant to both 11 U.S.C. § 548(a)(1)(B) and Conn. Gen. Stat. §§ 52-552e(a)(2) and f(a) ("CUFTA"), several payments that Ms. Knight made for her adult son's college tuition and expenses. Before the Court is the motion for summary judgment (the "Motion") of the Defendant in this adversary proceeding, the Board of Trustees of Connecticut State University System (the "Board"), which seeks judgment in its favor on both counts of the complaint. For the reasons stated herein, the Court denies the Motion in its entirety.

## *JURISDICTION*

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b). This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. § 1409(a). This action is brought as an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001. [1]

## *FACTUAL BACKGROUND*

The facts in this case are essentially undisputed. On September 18, 2015 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. The Debtor is the mother of Jeremy G. Thomas ("Jeremy"), who was born on November 10, 1993.

Jeremy was enrolled as a full-time undergraduate student at Central Connecticut State University ("CCSU") during the period from the Fall of 2011 through the Spring of 2016. Pursuant to Conn. Gen. Stat. § 10a-87, the Board of Trustees of the Connecticut State University System shall maintain CCSU.

---

[1] For ease of reference, Federal Rules of Bankruptcy Procedure are referred to as Fed. R. Bank. P. and Federal Rules of Civil Procedure are referred to as Fed. R. Civ. P..

Although the Debtor made payments to CCSU in October of 2011, the Trustee is not seeking to recover any payments made by the Debtor to CCSU before Jeremy reached the age of eighteen. Between November 28, 2011 and September 18, 2013, the Debtor paid $16,527.00 to CCSU for Jeremy's tuition and related educational expenses (the "Initial Transfers"). Between September 18, 2013 and the Petition Date, the Debtor paid CCSU $5,509.50 for Jeremy's tuition and expenses (the "Subsequent Transfers", and together with the "Initial Transfers", the "Transfers").

As averred in her uncontested affidavit, the Debtor made the payments to CSSU because she wanted to reduce the amount of debt that Jeremy would graduate with and because she wanted to fulfill her Expected Family Contribution, a federally-imposed formula that is applied in determining a student's eligibility for federal financial aid. The Debtor also believed that subsidizing Jeremy's college tuition would help Jeremy become financially self-sufficient, which, in turn, would ultimately result in a financial benefit to her because Jeremy would be less likely to rely upon her for housing, food and other costs and more likely to be in a position someday to provide financial support to her, if necessary.

## *ANALYSIS*

### A. Summary Judgment Standard

Fed. R. Bank. P. 7056 makes Fed. R. Civ. P. 56 applicable to adversary proceedings in bankruptcy. Fed. R. Civ. P. 56(a) provides that summary judgment shall enter only if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The burden rests with the moving party to clearly establish the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 331, 106 S. Ct. 2548,

2552–53, 91 L. Ed. 2d 265 (1986); *Adickes v. S.H. Dress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970). Regardless of whether the material facts are undisputed, however, "the court must determine whether the legal theory of the motion is sound." *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014).

### B. The Evidence Establishes That The Debtor Did Not Receive Reasonably Equivalent Value In Exchange For The Transfers

Section 548(a)(1)(B) of the Bankruptcy Code, the 'constructive fraud' provision, states, in pertinent part, as follows:

> (a)(1) The trustee may avoid any transfer…of an interest of the debtor in property…that was made...on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer…; and
>
> (ii)(I) was insolvent on the date that such transfer was made…or became insolvent as a result of such transfer…;

11 U.S.C. § 548(a)(1)(B). As the party seeking to avoid the transaction, the Trustee bears the burden to establish every element of a voidable transfer under section 548, including the absence of reasonably equivalent value, by a preponderance of the evidence. *In re S.W. Bach & Co.*, 435 B.R. 866, 875 (Bankr. S.D.N.Y. 2010).

For purposes of the Motion, the Board assumes that the Debtor was insolvent at the time of the Transfers or became so as a result of the Transfers. The parties therefore agree that the Transfers would qualify as constructively fraudulent under both 11 U.S.C. § 548(a)(1)(B) and Conn. Gen. Stat. §§ 52-552e(a)(2) and f(a), if the Trustee could establish that the Debtor received less than reasonably equivalent value in exchange for the Transfers.[2]

---

[2] The Court will not address Conn. Gen. Stat. §§ 52-552e(a)(2) and f(a) independently, as "[t]he Section 52–552d(b) concept of "reasonably equivalent value" [under CUFTA] is identical to the Section 548(a)(1)(B) concept of

As explained below, the Court finds that the Debtor did not receive any legally cognizable value under these statutes in exchange for the Transfers and therefore could not have received reasonably equivalent value.

To determine whether a debtor received "reasonably equivalent value" in exchange for a transfer, courts first determine whether the debtor received any "value" at all in exchange for the transfer, and then determine whether the value received was reasonably equivalent to the value the debtor gave up. *In re Lyondell Chem. Co.*, 567 B.R. 55, 113–14 (Bankr. S.D.N.Y. 2017); *Kipperman v. Onex Corp.*, 411 B.R. 805, 837 (N.D. Ga. 2009); *In re Adler, Coleman Clearing Corp.*, 263 B.R. 406, 466–67 (S.D.N.Y. 2001); *see also Mellon Bank v. Official Comm. of Unsecured Creditors (In re R.M.L., Inc.)*, 92 F.3d 139, 149 (3d Cir. 1996) ("[B]efore determining whether the value was 'reasonably equivalent' to what the debtor gave up, the court must make an express factual determination as to whether the debtor received any value at all.").

The Bankruptcy Code defines "value," for purposes of section 548, as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but [it] does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C. § 548(d)(2)(A). Under this definition, value is limited to economic benefits that preserve the net worth of the debtor's estate for the benefit of creditors. *Rubin v. Manufacturers Hanover Tr. Co.*, 661 F.2d 979, 992 (2d Cir. 1981) (applying the Bankruptcy Act) ("The decisions in fact turn on the statutory purpose of conserving the debtor's estate for the benefit of creditors."); *Suhar v. Bruno*, 541 F. App'x 609, 611–12 (6th Cir. 2013) ("[W]e look to the net effect of the transfer or obligation on the debtor's estate and, more specifically, on the remaining funds available to the unsecured creditors."); *Warfield v. Byron*, 436 F.3d 551, 560 (5th Cir. 2006) ("The primary

---

'reasonably equivalent value'." *In re Fitzgerald*, 255 B.R. 807, 810 (Bankr. D. Conn. 2000). The parties have not asserted otherwise.

consideration in analyzing the exchange of value for any transfer is the degree to which the transferor's net worth is preserved."); *Harman v. First Am. Bank of Md. (In re Jeffrey Bigelow Design Group, Inc.)*, 956 F.2d 479, 485 (4th Cir. 1992) ("[T]he focus is whether the net effect of the transaction has depleted the bankruptcy estate."); *see also HBE Leasing Corp. v. Frank*, 48 F.3d 623, 638–39 (2d Cir. 1995) (To determine whether a debtor indirectly received reasonably equivalent value, "the fact-finder must first attempt to measure the economic benefit that the debtor indirectly received from the entire transaction, and then compare that benefit to the value of the property the debtor transferred."); *Lisle v. John Wiley & Sons, Inc. (In re Wilkinson),* 196 F. App'x 337, 342 (6th Cir. 2006) ("Value can be in the form of either a direct economic benefit or an indirect economic benefit."); *Zubrod v. Kelsey (In Re Kelsey)*, 270 B.R. 776, 781 (9th Cir. BAP 2001) ("value is limited to economic or monetary consideration"); *In re R.M.L.*, 92 F.3d at 149 ("The touchstone is whether the transaction conferred realizable commercial value on the debtor ….") (citations omitted).

Moral or familial obligations cannot be considered in the value analysis "for the obvious reason that the depletion of resources available to creditors cannot be offset by the satisfaction of moral obligations." *Coan v. Fleet Credit Card Servs.,* 225 B.R. 32, 37 (Bankr. D. Conn. 1998). "As cold and unsentimental as that rule might seem, it is easier to understand from the perspective of creditors, most of whom would probably be unwilling to volunteer to provide a financial subsidy to enhance the insolvent debtor's family relationships by allowing the debtor to put valuable property beyond their reach." *Zeddun v. Griswold*, *(In re Wierzbicki)*, 830 F.3d 683, 689-90 (7th Cir. 2016) citing *In re Bargfrede*, 117 F.3d 1078, 1080 (8th Cir. 1997) ("[N]on-economic benefits in the form of a release of a possible burden on the marital relationship and the preservation of the family relationship" cannot confer reasonably equivalent value under

section 548 because they are "sufficiently analogous to other intangible, psychological benefits".); *In re Treadwell*, 699 F.2d 1050, 1051 (11th Cir. 1983) (Love and affection do not constitute "reasonably equivalent value" under section 548.).

Far from a novel principle, this rule traces its roots to one of the first fraudulent conveyance acts, the Statute of 13 Elizabeth, which was codified under English law in 1571. The Statute, also referred to as the Fraudulent Conveyance Act of 1571, "made it fraudulent to hide assets from creditors by giving them to one's family, friends, or associates." *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1587, 194 L. Ed. 2d 655 (2016). To hold otherwise would violate the bedrock common law principle, "be just before you are generous," which undergirds the Code's 'constructive fraud' provision, § 548(a)(1)(B). *See Boston Trading Grp., Inc. v. Burnazos*, 835 F.2d 1504, 1508 (1st Cir. 1987) (Breyer, J.); *In re Bloch*, 207 B.R. 944, 947 (D. Colo. 1997).

Indeed, carving out an exception for transfers that satisfied intangible social obligations would also violate the plain language of the Bankruptcy Code. Whereas the definition of value under section 548 includes "satisfaction . . . of a . . . debt of the debtor," 11 U.S.C. § 548(d)(2)(A), the Code defines "debt" as "liability on a claim," and "claim" refers to a right to payment or to an equitable remedy for breach of performance. 11 U.S.C. § 101(5), (12). These definitions plainly exclude intangible debts, whether they take the form of moral, familial or even spiritual obligations. *See Morris v. Midway Southern Baptist Church (In re Newman)*, 203 B.R. 468, 473–74 (D. Kan. 1996).

Accordingly, several courts have held that parents do not receive reasonably equivalent value in exchange for college tuition payments made on behalf of their adult children because any benefit received by parents is not economic, concrete or quantifiable. *See Roach v. Skidmore*

*Coll. (Matter of Dunston)*, 566 B.R. 624, 636-37 (Bankr. S.D. Ga. 2017); *Gold v. Marquette Univ. (In re Leonard)*, 454 B.R. 444, 457 (Bankr. E.D. Mich. 2011); *Banner v. Lindsay* (*In re Lindsay*), Adversary No. 08–9091 (CGM), 2010 WL 1780065, at *9 (Bankr. S.D.N.Y. May 4, 2010). From this view, parents who pay their child's college tuition do not receive any legally cognizable value, much less reasonably equivalent value, in exchange for such payments. *See In re Leonard*, 454 B.R. at 457 (parents received no value for college tuition payments made on behalf of their adult child because they had no legal obligation to pay); *see also Barbour v. Barbour*, 156 Conn. App. 383, 400, 113 A.3d 77, 87 (2015) ("As a general matter, [t]he obligation of a parent to support a child terminates when the child attains the age of majority, which, in this state, is eighteen.").

Notwithstanding the law's clear and settled pronouncement that "value" does not include satisfaction of intangible debts, a few courts have rejected efforts by trustees to recover parents' tuition payments for their children on the theory that such payments fulfill a parent's social obligation to maintain their family unit. *See, e.g.*, *Trizechahn Gateway, LLC v. Oberdick* (*In re Oberdick*), 490 B.R. 687, 712 (Bankr. W.D.Pa. 2013) (Even though parents have no legal obligation to assist in financing their children's undergraduate education "there is something of a societal expectation that parents will assist with such expense if they are able to do so."); *Sikirica v. Cohen (In re Cohen)*, Adversary No. 07–02517–JAD, 2012 WL 5360956 at *10 (Bankr. W.D.Pa. Oct. 31, 2012), *rev'd in part on other grounds*, 487 B.R. 615 (W.D.Pa. 2013) (payment of undergraduate tuition for adult child discharges parent's social obligation and therefore confers reasonably equivalent value; however, parent's social obligation to pay for adult child's higher education does not extend to financing child's graduate school tuition); *Eisenberg v. Penn*

*State Univ. (In re Lewis)*, Adversary No. 16-0282, 2017 WL 1344622 (Bankr. E.D. Pa. Apr. 7, 2017) (adopting *Oberdick* and *Cohen*).

To be sure, this Court credits concerns about familial obligations and the wisdom of allowing trustees to claw back parents' college tuition payments for their adult children. But, in our constitutional system, the separation of powers dictates that even well-founded concerns of the judiciary must yield to the clear intent of Congress:

> Our individual appraisal of the wisdom or unwisdom of a particular course consciously selected by the Congress is to be put aside in the process of interpreting a statute. Once the meaning of an enactment is discerned and its constitutionality determined, the judicial process comes to an end.
>
> \*    \*    \*
>
> [I]n our constitutional system the commitment to the separation of powers is too fundamental for us to pre-empt congressional action by judicially decreeing what accords with 'common sense and the public weal.' Our Constitution vests such responsibilities in the political branches.

*TVA v. Hill*, 437 U.S. 153, 194-95, 98 S. Ct. 2279, 2302, 57 L. Ed. 2d 117 (1978). Congress may someday amend the Bankruptcy Code to achieve the result reached in *Oberdick* and *Cohen* "but it is not for us to speculate, much less act, on whether Congress would have altered its stance had the specific events of this case been anticipated." *Kelly v. Robinson,* 479 U.S. 36, 58, 107 S. Ct. 353, 365, 93 L. Ed. 2d 216 (1986) (internal quotation omitted).

We have been here before. Not long ago, courts across the country divided over whether tithes and other donations to religious institutions were recoverable as constructively fraudulent transfers, given the absence of economic value that parishioners received in exchange for their donations. *Compare In re Bloch*, 207 B.R. 944, 948 (D. Colo. 1997) (tithe was recoverable, as no economic value was received in exchange) *with In re Moses*, 59 B.R. 815, 818 (Bankr. N.D.Ga.

1986) (holding that tithe was not recoverable, as church services constituted value within meaning of section 548).

In response, Congress passed the Religious Liberty and Charitable Donation Protection Act of 1998, Pub. L. No. 105-183 §§ 2, 3(a), June 19, 1998, 112 Stat. 517 (the "Donation Protection Act"). The Donation Protection Act amended section 548 to expressly shield "charitable contribution[s] to a qualified religious or charitable entity" from avoidance, provided that "the amount of that contribution does not exceed 15 percent of the gross annual income of the debtor for the year in which the transfer of the contribution is made" or "was consistent with the practices of the debtor in making charitable contributions." *See id.*

This measured formula reflects a sensible, yet necessarily arbitrary, balancing between a debtor's social obligations and their obligations to creditors that only Congress can achieve[3]:

> The responsibilities for assessing the wisdom of such policy choices and resolving the struggle between competing views of the public interest are not judicial ones: 'Our Constitution vests such responsibilities in the political branches.'

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 866, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) *quoting TVA v. Hill*, 437 U.S. 153, 195, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978)). Courts can no more discern whether society expects parents to cut off their tuition payments once children reach graduate school than they can divine a precise percentage

---

[3] In its wisdom, the Connecticut General Assembly has amended Conn. Gen. Stat. § 52-552i to expressly shield tuition payments from recovery, effective October 1, 2017:

> (f) A transfer or obligation is not voidable under subdivision (2) of subsection (a) of section 52-552e or section 52-552f against an institution of higher education, as defined in 20 USC 1001, if the transfer was made or obligation incurred by a parent or guardian on behalf of a minor or adult child in furtherance of the child's undergraduate education.

An Act Revising the Uniform Fraudulent Transfer Act, 2017 Conn. Legis. Serv. P.A. 17-50 (S.B. 1021). The law does not have retroactive effect, and the parties agree that it has no application in this case.

delimiting the amount of money debtors should be permitted to donate to charity. This Court is no exception.

Accordingly, the Court rejects the Board's assertion that the Debtor received "value" by discharging her familial obligation to pay a portion of Jeremy's tuition and expenses at CCSU. While such support is unquestionably admirable and may have helped fulfill her Expected Family Contribution under the federal financial aid regime, it is undisputed that the Debtor had no legal obligation pay for her adult son's college education. The Transfers did not, therefore, satisfy "a present or antecedent debt of the debtor" or otherwise confer "value" to the Debtor within the meaning of 11 U.S.C. § 548(d)(2)(A). *See Matter of Dunston*, 566 B.R. at 637; *see also In re Globe Tanker Servs. Inc.*, 151 B.R. 23, 24–25 (Bankr. D. Conn. 1993) ("[T]ransfers made or obligations incurred solely for the benefit of third parties do not furnish reasonably equivalent value.").

The Board's reliance upon *DeGiacomo v. Sacred Heart University, Inc.*, (*In re Palladino)*, 556 B.R. 10 (Bankr. D. Mass. 2016) for the proposition that the Debtor received an indirect economic benefit in exchange for the Transfers is equally unavailing. In *Palladino*, the court conceded that "value" must be economic in nature yet held that the debtor parents therein received an indirect economic benefit in exchange for paying their adult daughter's undergraduate tuition that was reasonably equivalent to their tuition payments:

> I find that the [parents] paid [Sacred Heart University] because they believed that a financially self-sufficient daughter offered them an economic benefit and that a college degree would directly contribute to financial self-sufficiency. I find that motivation to be concrete and quantifiable enough. The operative standard used in both the Bankruptcy Code and the UFTA is "reasonably equivalent value." The emphasis should be on "reasonably." Often a parent will not know at the time she pays a bill, whether for herself or for her child, if the medical procedure, the music lesson, or the college fee will turn out to have been "worth it." But future outcome cannot be the standard for determining whether one receives reasonably equivalent value at the time of a payment. A parent can reasonably assume that

> paying for a child to obtain an undergraduate degree will enhance the financial well-being of the child which in turn will confer an economic benefit on the parent. This, it seems to me, constitutes a *quid pro quo* that is reasonable and reasonable equivalence is all that is required.

*In re Palladino*, 556 B.R. at 16.

Respectfully, this Court disagrees. It may be reasonable for parents to believe that investment in their child's college education will enhance the financial well-being of the child. It may also be reasonable for parents to assume that their child will someday reimburse them for the cost of tuition or otherwise confer an economic benefit in return. Piling one plausible inference upon another, however, is little more than wishful thinking. Moreover, such speculation about another's ability to repay in the future and their willingness to do so, however reasonable, does not amount to a *quid pro quo* and certainly does not provide economic value to current creditors.

The absence of a *quid pro quo* is itself fatal under section 548(a)(1)(B). *In re Adler, Coleman Clearing Corp.*, 263 B.R. 406, 466–67 (S.D.N.Y. 2001) ("[T]he statute requires that the debtor must have 'received' the value in question 'in exchange' for the transfer or obligation at stake."). Even if a child promised to repay their parent's tuition outlays in the future, "[a]n unperformed promise to pay or to deliver securities in the future, after the debtor has completed the transfer or incurred the obligation, cannot satisfy the concept of a fair exchange." *Id.* ("Under § 548(d)(2)(A), the term "value" would exclude future considerations, at least to the extent they remain unperformed.").

Finally, it is, of course, true that future outcome cannot be the touchstone for whether a debtor received value, reasonably equivalent or otherwise, at the time of payment. *Palladino*, 556 B.R. at 10; *In re Adler*, 263 B.R. at 467 ("The requirement that the debtor must have 'received' the value in question expresses a temporal condition demanding an element of

contemporaneity in the determination of whether something close to the reasonable equivalence has been exchanged."). Indeed, as the Board points out, courts have concluded that a "mere expectation" of economic benefit "would suffice to confer 'value' so long as the expectation was '*legitimate and reasonable*.'" *In re R.M.L., Inc.*, 92 F.3d 139, 152 (3d Cir. 1996), quoting *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 647 (3d Cir.1991), *cert. denied*, 503 U.S. 937, 112 S.Ct. 1476, 117 L.Ed.2d 620 (1992). Under *R.M.L.* and its progeny, however, value is only conferred if "there is some chance that a contemplated investment will generate a positive return at the time of the disputed transfer". *Id.*

In this case, the Debtor could not have had a "legitimate and reasonable" expectation of economic benefit, much less expect to generate a positive return at the time, from transfers that conveyed thousands of dollars for her son's college tuition, without even a vague promise that funds would be repaid in the future. *See In re MarketXT Holdings Corp.*, 376 B.R. 390, 414 (Bankr. S.D.N.Y. 2007) ("The [d]ebtor could not have had a 'legitimate and reasonable' expectation of benefit" from transfer of significant assets "in return for a vague, speculative promise, never performed . . . .").

The Defendant's motion for summary judgment is denied. The parties will be directed to appear and confer with regard to the terms of a final pretrial order.

IT IS SO ORDERED at Hartford, Connecticut this 29th day of September 2017.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut